IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUENTON THOMPSON,

Plaintiff,

v. Case No. 23C0381

ALANA ACKER, et al.,

Defendants.

---

**STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS**

---

Plaintiff Quenton Thompson is proceeding under 42 U.S.C. § 1983 on Eighth Amendment deliberate indifference claims against nine individual State Defendants; Thompson also proceeds on a Rehabilitation Act claim against the Department of Corrections. (Dkts. 1, 12.) Prior to filing this lawsuit, Thompson failed to exhaust several of his deliberate indifference claims and his Rehabilitation Act claim against State Defendants. Therefore, these claims against State Defendants should be dismissed.

## STATEMENT OF FACTS

Thompson is an inmate in the custody of the Wisconsin Department of Corrections, who has been housed at Wisconsin Secure Program Facility since March 7, 2024. (Stolpa Decl. ¶ 6.) The allegations in his complaint span across his stay at Wisconsin Secure Program Facility, Columbia Correctional Institution and Green Bay Correctional Institution. At the time he filed this lawsuit, he was housed at

Columbia Correctional Institution (Columbia). (Dkt. 1.) He was at Columbia from May 8, 2020 through March 7, 2024. (Stolpa Decl. ¶6.) Thompson was housed at Green Bay Correctional Institution from November 25, 2019 through May 8, 2020. Prior to that, Thompson was housed at Wisconsin Secure Program Facility from February 7, 2019 through November 25, 2019. (Gray Decl. ¶¶6-7); also *see* https://appsdoc.wi.gov/lop/details/detail (last visited June 24, 2024.).)

Thompson was allowed to proceed against State Defendants Bonnie Alt, Mark Ledesma, Denise Valerius, Hannah Utter, Alana Acker, Dr. Laura Sukowaty, Jaime Adams, Sheryl Kinyon, and Dr. Justin Ribault. Thompson was also allowed to proceed against two non-State defendants, Faith Kresser and Dr. Eileen Gavin. The Department of Justice does not represent Kresser or Gavin.

Thompson was also allowed to proceed against some Doe Defendants later identified as health services unit manager Jaime Adams, RN Sheryl Kinyon, and Dr. Justin Ribault. (Dkt. 36.) Thompson did not identify to which specific claims these identified Jane/ John Doe defendants are attributed. (Dkt. 36.) For purposes of this summary judgment motion, only the claims against State Defendants will be addressed.

Thompson was allowed to proceed against State Defendants on the following Eighth Amendment deliberate indifference claims (Dkt. 1, 12):

1. Nurse Bonnie Alt for taking two months to respond to a health service request (HSR) in October 2020;

2. Dr. Ribault for giving him ineffective medications to treat his pain at some point in 2020-2023;
3. Dr. Ledesma, in July 2022, for giving him a placebo for pain and suggesting he get advanced treatment after his release;
4. Jane Doe nurse who didn't help Plaintiff obtain tramadol he had been re-prescribed following surgery on August 30, 2022;
5. Nurse Bonnie Alt for doing nothing to help him after he complained of continuing pain on June 27, 2022;
6. John Doe staffer who told him to continue with Tylenol or NSAID medication despite knowing that it wouldn't properly address his pain in either August or September of 2022;
7. John Doe medical staffer for responding to condition of numbed buttocks, scrotum, right leg and foot and lump in buttocks following an injection and doing nothing to treat or refer Plaintiff to someone else in either July or August of 2022;
8. Nurse Valerius, HSU Manager Utter, and Assistant HSU Manager Acker for not following outside podiatrist's recommendation for a lift in shoe and non-institution athletic shoes in either August or September 2022;
9. Dr. Sukowaty for discontinuing various restrictions to accommodate Plaintiff's pain and limitations in movement, cancelling appointments for podiatry, orthopedics, and imaging; and telling plaintiff she would not treat him while

he was in solitary confinement in approximately December 2022 – January 2023.

Thompson alleged that his disabilities from his medical condition caused him difficulties in many activities such as walking to the dining hall or library, using the restroom, and showering. (Dkts. 1, 12.) Thompson was also allowed to proceed on Rehabilitation Act claim against Wisconsin Department of Corrections on the basis that the prison staff would not grant him accommodations for these activities. (Dkts. 1, 12.)

Thompson did not submit any requests for accommodations while he was at Wisconsin Secure Program Facility, Columbia Correctional Institution or Green Bay Correctional Institution. (*See* Gray Decl. ¶¶ 6-9; Stolpa Decl. ¶¶5-7; and Schroeder Decl. ¶¶ 8-10.)

State Defendants concede that Thompson exhausted *only* the following claims:

- Nurse Alt did nothing to help him after he complained of continuing pain on June 27, 2022. Thompson exhausted this particular claim via WCI 2022-11240. (Davidson Decl. ¶ 7, Ex. 1002.)
- John Doe medical staffer for responding to condition of numbed buttocks, scrotum, right leg and foot, and lump in buttocks following an injection and doing nothing to treat or refer Plaintiff to someone else in either July or August of 2022. This complaint was exhausted by inmate complaint CCI-2022-11240. *Id.*

- Nurse Valerius, HSU Manager Utter, and Assistant HSU Manager Acker for not following outside podiatrist's recommendation for a lift in shoe and non-institution athletic shoes in either August or September 2022. Thompson exhausted this claim through inmate complaint CCI-2022-13386. (Davidson Decl. ¶ 8, Ex. 1003)
- Dr. Sukowaty cancelled his appointments for podiatry, orthopedics, imaging and not treating him while in solitary confinement. Thompson exhausted this claim through inmate complaint CCI-2023-1450. (Davidson Decl. ¶ 9, Ex. 1004.)

Thompson filed two inmate complaints regarding restrictions. One was an inmate complain about a restriction regarding his wedge pillow, CCI-2022-13938. (Davidson Decl. ¶10, Ex. 1005). Thompson did not exhaust this inmate complaint because after it was dismissed by the Reviewing Authority, Thompson failed to appeal the dismissal. (Ex. 1005.) The only inmate complaint, CCI-2023-16315, Thompson submitted regarding a front cuff restriction was signed on October 29, 2023, which was after he initiated this lawsuit. (Davidson Decl. ¶ 11, Ex. 1006 at 7.) So, he did not exhaust that inmate complaint, CCI-2023-16315, prior to filing this lawsuit. Similarly, he submitted inmate complaint CCI-2023-16313, alleging a shoe restriction while in segregation, on October 30, 2023. (Davidson Decl. ¶ 12, Ex. 1007.) This inmate complaint was also submitted after he initiated this lawsuit. Therefore, the remainder of his claims against Dr.

Sukowaty specifically about discontinuing various restrictions to accommodate his pain are not exhausted. (Exs. 1001, 1005-1007.)

Thompson filed no inmate complaints related to his claims against Nurse Alt taking two months to respond to an HSR in October 2020; Dr. Ribault giving him ineffective medication to treat his pain at some point in 2020-2023; Dr. Ledesma for giving him a placebo for pain and suggesting he get advanced treatment after his release in July 2022; Jane Doe nurse who didn't help Plaintiff obtain tramadol he had been prescribed following surgery on August 30, 2022; and against John Doe staffer who told him to continue with Tylenol or NSAID medication despite knowing that it wouldn't properly address his pain in either August or September of 2022. (*See* Inmate Complaint History Report at Ex. 1001).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is an "integral part of the Federal rules," and its purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). A court's decision to grant summary judgment "is not discretionary"—when "a moving party shows that the opposing party lacks evidence to support each element of a claim, summary judgment must be granted in favor of the movant." *Baron v. Frederickson*, 419 F. Supp. 2d 1056, 1063 (W.D. Wis. 2006) (citation omitted).

"The party moving for summary judgment has the initial burden of demonstrating there is no genuine dispute of material fact: 'it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case."'" *Bunn v. Fed. Deposit Ins. Corp.*, 908 F.3d 290, 295 (7th Cir. 2018) (citations omitted). Once the movant satisfies his initial responsibility, the burden then shifts to the nonmovant, who must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.* (citation omitted); *see also Celotex*, 477 U.S. at 324 ("[R]ule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). A nonmovant is "entitled to all reasonable inferences in his favor, but 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Lavite v. Dunstan*, 932 F.2d 1020, 1029 (7th Cir. 2019) (citation omitted).

## ARGUMENT

### I. The Court should dismiss a majority of the Eighth Amendment claims and the Rehabilitation Act claims against the State Defendants due to Plaintiff's failure to exhaust those claims.

#### A. The Prison Litigation Reform Act requires an inmate to exhaust his administrative remedies before filing a lawsuit.

The Prison Litigation Reform Act (the Act) "mandates that an inmate exhaust 'such remedies as are available' before bringing suit to challenge prison conditions."

*Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)). Specifically, it provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Act "speaks in unambiguous" and "mandatory" terms—"An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross,* 578 U.S. at 638.

The Act "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To "exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (citation omitted). This means an inmate must "properly" pursue "each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The steps an inmate must follow are established by state law. *Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018) ("State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA."). And they are "interpreted strictly," meaning "a 'prisoner must comply with the specific procedures and deadlines established by the prison's policy.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citation omitted). This means the PLRA requirement is not satisfied

by the filing of an untimely or otherwise procedurally defective administrative grievance. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

Rather, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025.

"Failure to exhaust 'is an affirmative defense, and the burden of proof is on the defendant[ ].'" *Lockett*, 937 F.3d at 1025 (citation omitted). Accordingly, the defendant must "show [the inmate's] failure to exhaust." *Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019). If the defendant meets this burden, a district court must dismiss the case. *Ross*, 136 S. Ct. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

### B. To exhaust in Wisconsin, an inmate must comply with Wis. Admin. Code DOC Ch. 310.

Wisconsin's administrative procedures for inmate complaints are outlined in Wis. Admin. Code DOC Ch. 310 (2018). The Code makes clear its objective: "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code DOC § 310.01(1); *see also Lockett*, 937 F.3d at 1027 ("[T]he primary purpose of the exhaustion doctrine: it alerts the prison officials to the existence of the problem and affords an opportunity to repair the injury.").

To achieve that purpose, the Code created the "inmate complaint review system." Wis. Admin. Code DOC § 310.04(1). Under the review system, an inmate must "attempt to resolve [an] issue by following the designated process specific to the subject of the complaint" before "filing a formal complaint." Wis. Admin. Code DOC § 310.07(1). If no resolution can be reached, an inmate must then "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code DOC § 310.07(2). At the discretion of the institution complaint examiner, a late complaint may be accepted for good cause. *Id.* However, for a late request to be considered for good cause, the inmate must request consideration of the late complaint in the written complaint itself and explicitly provide reason for the late filing. *Id.*

The inmate complaint must contain "only one clearly identified issue" that the inmate seeks to raise. Wis. Admin. Code DOC § 310.07(5).

Once an inmate files a complaint, the institution complaint examiner must "collect and date stamp all complaints with the date collected." Wis. Admin. Code DOC § 310.10(1). The institution complaint examiner must further "give written notice to the inmate within 10 days of collection that the complaint has been received." Wis. Admin. Code DOC § 310.10(4).

The institution complaint examiner must then return, reject, or accept and investigate a complaint. Wis. Admin. Code DOC § 310.10(2). An institution complaint examiner may "return a complaint within 10 days if it does not meet the criteria under s. DOC 310.07 (1), (3), (4), and (5)." Wis. Admin. Code DOC § 310.10(5). An

inmate has "one opportunity to correct and resubmit a returned complaint" within ten days. *Id.*

An institution complaint examiner may reject a complaint for one of nine reasons listed in the Code, including if a complaint is untimely. Wis. Admin. Code DOC § 310.10(6) (listing the nine reasons an examiner may give for rejecting a complaint); 310.10(6)(e) (listing untimeliness as a reason for rejecting a complaint). If the institution complaint examiner rejects the complaint, the inmate "may appeal . . . within 10 days" to the reviewing authority. Wis. Admin. Code DOC § 310.10(10). The reviewing authority examines only the basis for the rejection of the complaint, and its decision on the rejected complaint is final. *Id.*

An institution complaint examiner who accepts a complaint must "send a recommendation to the appropriate reviewing authority within 30 days from the date of receipt." Wis. Admin. Code DOC § 310.10(9). An institution complaint examiner may recommend a complaint be "affirmed or dismissed in whole or in part." Wis. Admin. Code DOC § 310.10(12). If the reviewing authority dismisses the complaint, the inmate "may appeal" to the corrections complaint examiner "within 14 days after the date of the decision." Wis. Admin. Code DOC § 310.12(1).

The corrections complaint examiner may return an appeal for five reasons listed in the Code, may recommend rejection of an appeal that fails to comply with section 310.09, or it may accept an appeal. Wis. Admin. Code DOC § 310.12(2), (4)(a)–(e), (5). Should the corrections complaint examiner accept the appeal, it must "recommend that the reviewing authority decision be affirmed or dismissed, in whole

or in part, and send its recommendation to the secretary within 45 days of receipt of the appeal." Wis. Admin. Code DOC § 310.12(9).

The secretary must then "make a decision within 45 days following receipt of the [corrections complaint examiner's] recommendation." Wis. Admin. Code DOC § 310.13(1). The secretary must "affirm or dismiss the [corrections complaint examiner's] recommendation, in whole or in part, or return the appeal to the [corrections complaint examiner] for further investigation." Wis. Admin. Code DOC § 310.13(2). "The secretary's decision is final." Wis. Admin. Code DOC § 310.13(3).

**C. To exhaust an ADA/ Rehabilitation Act Claim, an inmate must first seek redress through the inmate complaint review system after receiving a denial.**

To initiate a reasonable accommodation request, an inmate can initiate the request through a staff referral, interview request form, or via a DOC-2530 Reasonable Modification/ Accommodation request form. (Schroeder Decl. ¶ 4.) Once a request is reviewed it will either be granted or ultimately denied. If denied, the inmate can seek redress through the inmate complaint review system. An inmate is required to use the inmate complaint review system as described above.

**D. Thompson failed to exhaust his administrative remedies related to several of his deliberate indifference claims.**

Thompson failed to exhaust his administrative remedies regarding several of his deliberate indifference claims involved in this lawsuit. The purpose of exhausting administrative remedies is to put the institution on notice of the alleged issue and to provide the institution with the opportunity to rectify the issue. *Lockett*, 937 F.3d at

1027 ("[T]he primary purpose of the exhaustion doctrine: it alerts the prison officials to the existence of the problem and affords an opportunity to repair the injury.").

A review of Thompson's lengthy inmate complaint history demonstrates that he is well-versed in filing inmate complaints. However, as stated *supra*, Thompson filed no inmate complaints related to his claims against Nurse Alt taking two months to respond to an HSR in October 2020; Dr. Ribault giving him ineffective medication to treat his pain at some point in 2020-2023; Dr. Ledesma for giving him a placebo for pain and suggesting he get advanced treatment after his release in July 2022; Jane Doe nurse who didn't help Plaintiff obtain tramadol he had been prescribed following surgery on August 30, 2022; and against John Doe staffer who told him to continue with Tylenol or NSAID medication despite knowing that it wouldn't properly address his pain in either August or September of 2022. (*See* Inmate Complaint History Report at Ex. 1001). Therefore, Thompson failed to exhaust these claims prior to filing his lawsuit. All of these claims should be dismissed.

Regarding his claims that Dr. Sukowaty allegedly discontinued various restrictions to accommodate his pain and limitations in movement, Thompson failed to exhaust these. Thompson filed two inmate complaints regarding restrictions. One was a restriction about his wedge pillow, CCI 2022-13938. (Davidson Decl. ¶10, Ex. 1005). Thompson did not exhaust this inmate complaint because after it was dismissed by the Reviewing Authority, on September 25, 2022, Thompson failed to appeal the dismissal. (Ex. 1005 at 4.) Under the administrative code, Thompson had 14 days from the date of the Reviewing Authority's dismissal within which to appeal

the decision. Wis. Admin. Code DOC § 310.12 (1). He did not do so. A prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require". *Pozo,* 286 F.3d at 1025.

The only inmate complaint Thompson submitted regarding a front cuff restriction, CCI-2023-16315, was signed on October 29, 2023, which was *after* he initiated this lawsuit. (Ex. 1006 at 7.) So, he did not exhaust that inmate complaint, 2023-16315, prior to filing this lawsuit. Similarly, he filed another inmate complaint, CCI-2023-16313, after this lawsuit was initiated. He signed CCI-2023-16313 on October 30, 2023, alleging a shoe restriction while in segregation (Ex. 1007 at 6.) So, Thompson failed to exhaust the claims related to shoe restriction against Dr. Sukowaty prior to filing this lawsuit. Therefore, the claims against Dr. Sukowaty specifically about discontinuing various restrictions to accommodate his pain and limitations in movement are not exhausted. (Exs. 1001, 1005-1007.) Accordingly, these claims related to Dr. Sukowaty discontinuing various restrictions related to his pain and limitations in movement should be dismissed.

**E. Thompson failed to exhaust his administrative remedies related to his Rehabilitation Act claim against the Wisconsin Department of Corrections.**

As stated above, there is no record from any of the institutions at which Thompson was housed, showing that he filed an ADA accommodation request and of any denials of his requests for accommodation. (*See* Gray Decl. ¶¶ 6-9; Stolpa Decl. ¶¶5-7; and Schroeder Decl. ¶¶ 8-10).

There is also no documentation of Thompson having filed any inmate complaints related to denials of ADA accommodation. (Ex. 1000.) Therefore, Thomspon's Rehabilitation Act claim against the DOC should be dismissed.

At bottom, Thompson failed to exhaust the bulk of his deliberate indifference claims and Rehabilitation Act claim against State Defendants. *Pozo*, 286 F.3d at 1024. For these reasons, these claims should be dismissed.

## CONCLUSION

Based on the facts and argument set forth above, State Defendants respectfully request the Court grant their Motion for Partial Summary Judgment for Plaintiff's failure to exhaust administrative remedies. The only claims against State Defendants that should remain are the following: Nurse Alt doing nothing to help Thompson after he complained of continuing pain on June 27, 2022; John Doe medical staffer responding to condition of numbed buttocks, scrotum, right leg and foot, and lump in buttocks following an injection and doing nothing to treat or refer Plaintiff to someone else in either July or August of 2022; Nurse Valerius, HSU Manager Utter, and Assistant HSU Manager Acker for not following outside podiatrist's recommendation for a lift in shoe and non-institution athletic shoes in either August or September 2022; and Dr. Sukowaty cancelling his appointments for podiatry, orthopedics, imaging and not treating him while in solitary confinement.

Dated July 3, 2024.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Annie V. Petering
ANNIE V. PETERING
Assistant Attorney General
State Bar #1102422

REBECCA A. PAULSON
Assistant Attorney General
State Bar #1079833

Attorneys for State Defendants.

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-9227 (Petering)
(608) 266-0278 (Paulson)
(608) 294-2907 (Fax)
peteringav@doj.state.wi.us
paulsonra@doj.state.wi.us